UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES DANIEL TACHENY and CASSIE E.C. TACHENY, husband and wife, as individuals, | Case No. 10-CV-2067 (PJS/JJK) |
| Plaintiffs, | |
| v. | ORDER |
| M&I MARSHALL & ILSLEY BANK, as successor in interest to First Indiana Bank, N.A., an Indiana Corporation; MORTGAGE IT, a subsidiary of Deutsche Bank, a New York Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; JON AND JANE DOES 1-10, Jointly and Severally; and CITIMORTGAGE, INC., a New York Corporation, | |
| Defendants. | |

Michael J. Keogh, KEOGH LAW OFFICE, for plaintiffs.

Patrick J. Lindmark, Eldon J. Spencer, Ernest F. Peake, LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD., for defendant Mortgage IT.

Ellen B. Silverman, Charles F. Webber, FAEGRE & BENSON LLP, for defendant Mortgage Electronic Registration Systems, Inc.

This matter is before the Court on the unopposed motions to dismiss of defendants

Mortgage IT and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively

"defendants").[1]  For the reasons stated below, the motions are granted in part and denied in part.

---

[1] Pursuant to D. Minn. L.R. 7.1(b)(2), plaintiffs' responses to the motions were due on January 12, 2011.  Plaintiffs did not file any response or otherwise communicate with the Court. On January 25, 2011, having heard nothing from plaintiffs, the Court canceled the hearing and took the motions under advisement.  The Court notes that Mortgage IT's motion appears on the

(continued...)

## I.  BACKGROUND

Plaintiffs James and Cassie Tacheny are the owners of a home in White Bear Lake,

Minnesota.  Am. Compl. ¶ 6.  On April 26, 2006, plaintiffs entered into a mortgage-loan

transaction with Mortgage IT ("the Loan").  *Id.* ¶¶ 16-18.  According to the note, plaintiffs

borrowed $417,000 from Mortgage IT to be paid over 30 years at a yearly rate of 6.375 percent.

*Id.* Ex. 2.  The mortgage securing the note lists MERS as the mortgagee acting as a nominee for

Mortgage IT.[2]  *Id.*

On April 24, 2009, plaintiffs sent defendants a letter that purported to rescind the Loan

and requested information about the Loan.  Am. Compl. Ex. 5.  MERS did not respond to the

letter.  Am. Compl. ¶ 40.  Mortgage IT responded to the letter on May 21, 2009, and, in that

response, denied that plaintiffs had a right to rescind.  Am. Compl. Ex. 7.

Plaintiffs bring claims under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et

seq.; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq.; and

Minnesota's Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43-325D.48.  Plaintiffs allege

that they are entitled to rescind the Loan and to recover damages because defendants failed to

accurately disclose the finance charge associated with the Loan and failed to provide them with

---

[1](...continued)
docket as though it was originally filed on January 24, 2011.  That filing, however, was merely a
docketing correction that did not retrigger the time limits under D. Minn. L.R. 7.1(b); Mortgage
IT had already filed and served its motion and supporting materials on December 22, 2010.  *See*
Docket No. 42.

[2]On the same day, plaintiffs borrowed an additional $100,000 from First Indiana Bank,
N.A., which later assigned the related mortgage to defendant CitiMortgage, Inc.  Am. Compl.
Exs. 3, 4.  Plaintiffs refer to the $417,000 loan and the $100,000 loan as "Loan 1" and "Loan 2,"
respectively.  Loan 2 is also the subject of plaintiffs' claims in this lawsuit, but it does not
involve either Mortgage IT or MERS, and thus it is not directly relevant to the pending motions.

the requisite number of copies of a notice informing them of their right to rescind the Loan.

Plaintiffs further allege that they are entitled to damages because defendants wrongfully refused

to rescind the Loan and wrongfully failed to provide them with the information requested in their

April 24, 2009 letters.

## II.  ANALYSIS

### A.  Standard of Review

In reviewing a Rule 12(b)(6) motion, a court must accept as true all factual allegations in

the complaint and draw all reasonable inferences in the plaintiff's favor.  *Blankenship v. USA*

*Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  Although the factual allegations in the complaint

need not be detailed, they must be sufficient to "raise a right to relief above the speculative

level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ordinarily, if the parties present, and the court considers, matters outside of the

pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment.  Fed. R.

Civ. P. 12(d).  But the court may consider exhibits attached to the complaint and documents that

are necessarily embraced by the complaint without converting the motion into one for summary

judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

### B.  Count 1

Under TILA, a borrower is entitled to rescind certain mortgage-loan transactions up to

three business days following the closing of the loan.  15 U.S.C. § 1635(a).  The lender is

required to "clearly and conspicuously disclose" this right to the borrower "in accordance with

regulations of the Board . . . ."  *Id.*  Those regulations require, among other things, that the lender

give two copies of a notice of this rescission right to each borrower.  12 C.F.R. § 226.23(b)(1).

If the lender fails to give proper notice of the right to rescind to the borrower — or if the lender

fails to make other "material disclosures" to the borrower, including the annual percentage rate,

the finance charge, and the amount financed — then the borrower's right to rescind is extended

up to three years following the closing.  15 U.S.C. § 1635(a), (f); 12 C.F.R. § 226.23(a)(3) &

n.48.  In this case, plaintiffs allege that their right to rescind the Loan extended to three years

under TILA because defendants failed to accurately disclose the finance charge and failed to

give them each two copies of the notice of their right to rescind the Loan.

As for the alleged failure to disclose the finance charge, defendants argue that plaintiffs

have not adequately pleaded this claim in their amended complaint.  The Court agrees.  The most

specific allegation in plaintiffs' amended complaint regarding the finance charge is as follows:

> [T]he Plaintiffs read the TILA Disclosure Statement, the
> Itemization of Amount Financed, and understood the prepaid
> Finance Charges being disclosed at the Closing for both Loan 1
> and Loan 2.  However, if the Plaintiffs would have known prior to
> Closing that additional Finance Charges were actually allocated to
> the Amount Financed, further itemized on the HUD-1 Settlement
> Statement, [Plaintiffs] would have sought and obtained a lower
> Finance Charge price and annual percentage rate ("APR") for both
> Loan 1 and Loan 2.

Am. Compl. ¶ 23.

Like defendants, the Court has difficulty understanding what plaintiffs are attempting to

allege with respect to the disclosure of the finance charge.  According to the Truth-in-Lending

Disclosure Statement for the Loan (attached to the amended complaint), the finance charge is

$520,310.17 and the amount financed is $416,241.50.  Am. Compl. Ex. 2 at 18.  The HUD-1

Settlement Statement (also attached to the amended complaint) itemizes various fees and costs

charged to plaintiffs.[3]  Am. Compl. Ex. 2 at 20.  As best as the Court can tell from the amended

complaint and the documents attached to the amended complaint, plaintiffs are alleging that the

disclosure of $520,310.17 as the finance charge is inaccurate because it should have included

additional amounts that were instead allocated to the amount financed.  But plaintiffs do not

allege which charges were wrongfully allocated to the amount financed rather than to the finance

charge.  Nor do plaintiffs allege why those charges should have been included in the finance

charge.  Given that plaintiffs are apparently referring to charges itemized on the HUD-1

Settlement Statement, it would have been easy for plaintiffs to clearly allege which of those

charges should have been included in the finance charge and why.  Plaintiffs did not do so,

leaving the Court and defendants to guess at the grounds for their claim.  In short, to the extent

that plaintiffs allege that they had a three-year right to rescind because defendants failed to

accurately disclose the finance charge, the Court holds that plaintiffs have failed to state a claim.

As noted, plaintiffs also allege that they had a three-year right to rescind because

defendants failed to provide them each with two copies of the notice of their right to rescind the

Loan.  Defendants do not dispute that such a failure would extend the right to rescind to three

years.  But Mortgage IT has submitted a receipt signed by both plaintiffs acknowledging that

they each received two copies of the notice of their right to rescind.  *See* Lindmark Aff. Ex. A.

Relying on this acknowledgment, Mortgage IT argues that plaintiffs have failed to rebut the

presumption that notice was proper.  *See* 15 U.S.C. § 1635(c) (written acknowledgment of

receipt of disclosures creates a rebuttable presumption of receipt).

---

[3]Although plaintiffs refer to a HUD-1 Settlement Statement, it appears that they actually received a HUD-1A Settlement Statement (which is used for refinancing transactions in which no seller is involved).  *See* 24 C.F.R. § 3500.8(a).

Defendants may ultimately prevail on this argument, but it is premature.  Defendants have brought a motion to dismiss, not a summary-judgment motion.  In ruling on a motion to dismiss, the Court may not consider matters outside of the pleadings (with certain exceptions not applicable here), and the Court must treat the factual allegations in the complaint as true.  The amended complaint alleges that plaintiffs did not each receive two copies of the notice of their right to rescind.  For present purposes, the Court must assume that this allegation is true, and thus the Court cannot dismiss plaintiffs' rescission claim on the basis of the signed receipt.

Mortgage IT next argues that plaintiffs have failed to state a claim for rescission because they have not alleged their ability to tender the Loan proceeds.  *See, e.g.*, *Franz v. BAC Home Loans Servicing, LP*, No. 10-2025, 2011 WL 846835, at *3 (D. Minn. Mar. 8, 2011) (dismissing rescission claim because plaintiff failed to allege ability to tender); *Garza v. Am. Home Mortg.*, No. 08-1477, 2009 WL 188604, at *5 (E.D. Cal. Jan. 27, 2009) (same).  It is true that, to effect rescission, a borrower must at some point tender the loan proceeds to the lender.  *See* 15 U.S.C. § 1635(b).  But the Court respectfully disagrees with those courts that have held that, in order to state a claim for rescission under TILA, a borrower must, in his or her complaint, allege a present ability to tender.

Not one word in TILA requires a borrower to tender — or to have the ability to tender — before seeking rescission.  To the contrary, the plain language of TILA requires the lender to release its security interest and take other steps to effect rescission *before* the borrower is required to tender.  15 U.S.C. § 1635(b).  In altering the ordinary, common-law sequence of rescission, Congress put borrowers — who, after all, are extremely unlikely to be able to tender without first getting another loan or selling the property — in a stronger bargaining position.  *See*

*Williams v. Homestake Mortg. Co.*, 968 F.2d 1137, 1140 (11th Cir. 1992).  By requiring the

lender to release its security interest before the borrower tenders, TILA makes it much more

likely that a borrower will be able to obtain the money that he or she *needs* to tender by

refinancing or selling his or her (unencumbered) property.

To be sure, courts have the equitable discretion to alter this sequence of events.  15

U.S.C. § 1635(b) ("The procedures prescribed by this subsection shall apply except when

otherwise ordered by a court."); *Fed. Deposit Ins. Corp. v. Hughes Dev. Co.*, 938 F.2d 889, 890

(8th Cir. 1991) ("TILA generally provides that the creditor shall perform first (i.e., return monies

paid by the debtor and release its security interest); however, the Act gives courts discretion to

devise other procedures, 15 U.S.C. § 1635(b), including conditioning rescissions upon the

debtor's prior return of the principal.").  And thus, a plaintiff's ability to tender, along with all of

the other facts and circumstances of the case, will be relevant when the court determines — some

months or years into the litigation — whether the plaintiff should be required to tender before the

lender is required to release its security interest.

But the fact remains that TILA does not, by its terms, require a plaintiff to tender first.

As the Court explained in *Coleman v. Crossroads Lending Group, Inc.*, No. 09-0221, 2010 WL

4676984 (D. Minn. Nov. 9, 2010), "the fact that Congress set forth a specific sequence for the

parties' performance — first the lender's release of the security interest, and then the borrower's

return of the funds — suggests that Congress thought that this sequence would usually be

necessary to achieve the goals of TILA."  *Id.* at *7.  Requiring a plaintiff to plead a present

ability to tender at the outset of the case would dramatically alter the statutory scheme in favor of

lenders.  Indeed, the practical effect of such an alteration would be to bar almost all TILA claims

for rescission, for it would be a rare TILA plaintiff who could truthfully allege an ability to tender at the time that his or her complaint is filed.  Such a result would be at odds with the purpose of TILA, which is "remedial legislation, to be construed broadly in favor of consumers . . . ." *Rand Corp. v. Yer Song Moua*, 559 F.3d 842, 845 (8th Cir. 2009).  The Court therefore rejects Mortgage IT's argument that plaintiffs must plead the ability to tender in order to state a claim for rescission under TILA.

Finally, MERS asserts that plaintiffs' TILA rescission claim against it must be dismissed because MERS is not a "creditor" for purposes of TILA.  But TILA provides that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation."  15 U.S.C. § 1641(c).  Plaintiffs allege that MERS is an assignee, Am. Compl. ¶ 8, and MERS does not claim that the Loan documents attached to the amended complaint demonstrate otherwise.  But even if MERS is not an assignee, the Court would not dismiss the rescission claim against MERS.  MERS is the named mortgagee on the mortgage for the Loan.  *See* Am. Compl. Ex. 2 at 4.  Without MERS, it might not be possible for the Court to afford complete relief to plaintiffs on their rescission claim.  *See Stewart v. BAC Home Loans Servicing, LP*, No. 10-C-2033, 2011 WL 862938, at *3 (N.D. Ill. Mar. 10, 2011) (declining to dismiss TILA rescission claim against MERS because "MERS may be necessary to get [plaintiff] back to that *status quo* if [plaintiff's] rescission is enforced by the Court").  Defendants' motions to dismiss are therefore denied as to plaintiffs' rescission claim insofar as that claim is premised on defendants' alleged failure to provide the requisite number of copies of the notice of plaintiffs' right to rescind.

*C. Count 2*

Count 2 in the amended complaint is entitled "TILA; Reg. Z Recoupment Claims Against All Defendants." Underneath this heading, plaintiffs list six ways in which defendants allegedly violated TILA. *See* Am. Compl. ¶¶ 58(a)-(f). Most of the allegations vaguely allude to defendants' failure to provide unspecified disclosures at the closing, but plaintiffs also allege that defendants failed to provide the requisite number of copies of the notice of their right to rescind. Plaintiffs do not follow this list with any claim for money damages, but later in their amended complaint they demand statutory damages under 15 U.S.C. § 1640(a), which imposes liability on "any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title . . . ." *See* Am. Compl. § VIII ¶¶ 4-5.

Defendants argue that these claims for damages are time-barred. For the most part, the Court agrees. All six of the allegations in Count 2 allege TILA violations that occurred during or before the April 26, 2006 closing of the Loan. Plaintiffs did not file this action until May 14, 2010, more than three years after the closing. Under TILA, a claim for damages must be brought within one year of the violation. 15 U.S.C. § 1640(e). As a result, plaintiffs' claims for damages for violations that allegedly occurred at or before the closing are all time-barred.

TILA provides an exception to the one-year statute of limitations when the violation is raised "as a matter of defense by recoupment or set-off" in "an action to collect the debt . . . ." 15 U.S.C. § 1640(e). By referring to Count 2 as a recoupment claim, plaintiffs are apparently trying to take advantage of this exception. But plaintiffs are not asserting these violations "as a matter of defense" in an action that the lenders have filed against them "to collect the debt"; rather, plaintiffs are asserting these violations "as a matter of [offense]" in an action that *they*

have filed against the lenders to collect *damages*.  As a result, this exception does not apply.  *See*

*Henderson v. GMAC Mortg. Corp.*, 347 Fed. Appx. 299, 302 (9th Cir. 2009) ("These [TILA

damages] claims cannot be salvaged under a theory of recoupment because the Hendersons, not

GM FMLS, initiated this action."); *In re Smith*, 737 F.2d 1549, 1554 (11th Cir. 1984) ("To

qualify as recoupment a cause of action must be asserted defensively.").

   Plaintiffs have, however, alleged an additional TILA violation (although it is not listed in

Count 2).  At various points in the amended complaint, plaintiffs allege that defendants violated

TILA by failing to rescind the Loan within 20 days after receiving plaintiffs' rescission notices.

*See* Am. Compl. ¶¶ 40, 53, § VIII ¶ 5.  If defendants acted unlawfully in refusing to rescind the

Loan, their refusal was an independent TILA violation.  *See Miguel v. Country Funding Corp.*,

309 F.3d 1161, 1165 (9th Cir. 2002); *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d

1096, 1103 (D. Minn. 2010).  Plaintiffs' claim for the wrongful failure to rescind the Loan

accrued 20 days after defendants received the rescission notices.  *See Frazile v. EMC Mortg.

Corp.*, 382 Fed. Appx. 833, 839 (11th Cir. 2010) ("the one-year limitations period for violation

of § 1635(b) claims runs from twenty days after a plaintiff gives notice of rescission.").

Plaintiffs do not allege when defendants received the rescission notices, but plaintiffs do allege

that they sent the notices on or about April 24, 2009.  Am. Compl. ¶ 35.  Based on this

allegation, plaintiffs' claim for damages under TILA for defendants' failure to rescind appears

timely.

   Finally, MERS argues that, even if plaintiffs' claims for damages are timely, MERS

cannot be held liable for damages because it is neither a "creditor" nor subject to assignee

liability under TILA.  As discussed above, there is no question that a borrower can rescind

against an assignee.  *See* 15 U.S.C. § 1641(c).  But courts have split over whether a borrower can

recover damages and attorney's fees against an assignee who fails to honor a valid rescission

notice.  *Compare Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994) ("Neither

§ 1641 nor any other section provides for a statutory penalty or an award of attorney's fees to a

plaintiff should an assignee fail to respond to a valid rescission notice.  Rescission is therefore

the only remedy against Bankers to which plaintiff is entitled.") *with Fairbanks Capital Corp. v.*

*Jenkins*, 225 F. Supp. 2d 910, 916-17 (N.D. Ill. 2002) (holding that plaintiffs are entitled to

recover attorney's fees against an assignee who wrongfully refuses to rescind and suggesting that

such plaintiffs are also probably entitled to recover statutory damages).  Although MERS argues

generally that it is not subject to assignee liability, it has not specifically addressed plaintiffs'

claim for damages arising out of MERS's alleged wrongful failure to rescind.  And as noted

above, plaintiffs have filed no response to defendants' motions.  Given that there is a split of

authority on this issue, the Court elects not to rule on this issue in the absence of specific briefing

from the parties.  The Court will therefore allow this claim to proceed for the time being.

*D. Count 3*

RESPA requires a servicer of a federally related mortgage loan to respond to a "qualified

written request from the borrower . . . for information relating to the servicing of such loan . . . ."

 12 U.S.C. § 2605(e)(1)(A).  A servicer who fails to comply with this obligation may be held

liable for actual and (in certain circumstances) statutory damages as well as attorney's fees and

costs.  12 U.S.C. § 2605(f).

Plaintiffs allege that the April 24, 2009 letters that they sent to defendants were

"qualified written requests" (or "QWRs") within the meaning of RESPA and that defendants

violated RESPA by failing to provide the information requested in the QWRs.  Defendants move

to dismiss this claim on the ground that they are not the servicers of plaintiffs' Loan and are

therefore not subject to the requirements of § 2605(e).  The Court agrees with defendants.

Section 2605(e) clearly applies only to loan servicers.  But plaintiffs do not allege that

MERS is a servicer in general or that MERS serviced their Loan.  Although plaintiffs do

generally allege that Mortgage IT is "a mortgage loan company and/or a servicer of mortgage

loans," Am. Compl. ¶ 9, plaintiffs do not allege that Mortgage IT serviced *their* Loan.  More

problematically, plaintiffs have attached to their amended complaint a QWR that they sent to

Wells Fargo Home Mortgage on the same day that they sent the QWRs to defendants.  *See* Am.

Compl. Ex. 5 at 9.  In the Wells Fargo QWR, plaintiffs state as follows:

> On or about April 26th 2006, a federally related mortgage loan
> transaction was closed utilizing Mortgageit as the lender.  The
> transaction was subsequently, and soon thereafter, transferred to
> Wells Fargo Home Mortgage[] for purported servicing.

*Id.*  Plaintiffs incorporated this QWR into their amended complaint.  Am. Compl. ¶ 35.  In other

words, plaintiffs have incorporated into their amended complaint their own statement that *Wells*

*Fargo* — not Mortgage IT or MERS — serviced the Loan since shortly after the Loan closed in

April 2006.  Read in light of this statement, plaintiffs' general allegation that Mortgage IT

services loans is not sufficient to state a plausible claim that Mortgage IT serviced *plaintiffs'*

Loan.  And without any allegation that defendants serviced plaintiffs' Loan, plaintiffs cannot

plausibly claim that defendants were required to comply with § 2605(e).[4]  Plaintiffs' RESPA

claims against Mortgage IT and MERS are accordingly dismissed.

*E. Count 4*

Finally, plaintiffs bring a claim under Minnesota's Deceptive Trade Practices Act

("DTPA") premised on the same conduct that underlies their TILA and RESPA claims.  The

DTPA prohibits thirteen different "deceptive trade practices," including "any other conduct

which similarly creates a likelihood of confusion or of misunderstanding."  Minn. Stat.

§ 325D.44, subd. 1.  A plaintiff alleging a violation of the DTPA must meet the heightened

pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  *DeVary*, 701 F. Supp. 2d

at 1109-10.

As discussed above, plaintiffs' allegation that defendants failed to accurately disclose the

finance charge has not been pleaded with the specificity required by Rule 8(a), much less with

the specificity required by Rule 9(b).  Likewise, plaintiffs do not identify any misleading

statements or omissions that defendants are alleged to have made in response to the QWRs.  The

closest plaintiffs come to doing so is to allege that Mortgage IT's response to the QWR imposed

finance and other unspecified charges.  Am. Compl. ¶ 39.  This allegation is completely belied

by Mortgage IT's actual response, which is attached to plaintiffs' amended complaint, *see* Am.

Compl. ¶ 37 & Ex. 7, and which does not purport to impose any charges on plaintiffs.  *Cf. N. Ind.*

*Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998) ("a[n]

[attached] document that discloses what the complaint alleges it concealed will defeat the

---

[4]Even if defendants were servicers for the Loan before servicing was transferred to Wells Fargo, they were not required to respond to the April 24, 2009 QWRs.  A request for information is not a QWR "if it is delivered to a servicer more than 1 year after . . . the date of transfer of servicing . . . ."  24 C.F.R. § 3500.21(e)(2)(ii).

allegation of concealment" (citation and quotations omitted)).  And because defendants were not

required to respond to the QWRs *at all*, the Court cannot understand how MERS's failure to

respond could have created confusion or misunderstanding within the meaning of the DTPA.

The only underlying wrong that plaintiffs have pleaded with sufficient particularity is

their allegation that defendants failed to provide each of them with two copies of the notice of

their right to rescind.  There is no dispute, however, that plaintiffs each received at least one

copy of the notice of their right to rescind.  *See* Am. Compl. ¶ 18 & Ex. 2 at 22-23.  Plaintiffs do

not explain how receiving two substantively identical notices of their right to rescind instead of

four substantively identical notices of their right to rescind could possibly have created a

likelihood of confusion or misunderstanding within the meaning of the DTPA.

In sum, plaintiffs' DTPA claims against Mortgage IT and MERS are largely

incomprehensible and, to the extent that they are comprehensible, are plainly without merit.

Those claims are therefore dismissed.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.   MERS's motion to dismiss [Docket No. 38] is GRANTED IN PART and

      DENIED IN PART.

2.   Mortgage IT's motion to dismiss [Docket No. 45] is GRANTED IN PART and

      DENIED IN PART.

3.   The motions are DENIED as to the following claims:

      a.      Plaintiffs' TILA claim for rescission insofar as that claim relates to

defendants' alleged failure to provide plaintiffs with the required number

of notices of plaintiffs' right to rescind the Loan; and

      b.      Plaintiffs' TILA claim for damages arising out of defendants' alleged

wrongful failure to honor plaintiffs' demand for rescission.

4.      The motions are GRANTED in all other respects, and all remaining claims

against MERS and Mortgage IT are DISMISSED WITH PREJUDICE AND ON

THE MERITS.

Dated: April <u>29</u>, 2011                  <u>s/Patrick J. Schiltz</u>
                                      Patrick J. Schiltz
                                      United States District Judge